Opinion issued August 28, 2003













     






In The
Court of Appeals
For The
First District of Texas




NOS. 01-02-00041-CR
                                                               01-02-00042-CR
                                                               01-02-00043-CR




JOHN PAUL RIVERA, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 179th District Court
Harris County, Texas
Trial Court Cause Nos. 867831, 878870, & 867829



 
 
O P I N I O N
          John Paul Rivera, appellant, pleaded guilty to three offenses of aggravated
robbery. Following a pre-sentence investigation (PSI) hearing, the trial court
assessed punishment at 20 years’ confinement in each case, with the sentences to run
concurrently. In three issues, appellant argues that he was denied effective assistance
of counsel, that the court erred in denying his counsel at least 10 days to prepare for
the pre-sentence investigation hearing, and that the court erred in not withdrawing
appellant’s plea of guilty. We affirm.
Facts
          Indictments
          Appellant was charged with three separate offenses of aggravated robbery. The
first indictment, Cause Number 867829, accused appellant of threatening Maria
Dejesus Guerrero with a knife while robbing her on May 9, 2000. The second
indictment, Cause Number 867831, accused appellant of threatening Santos Mendez
with a stick while robbing him on May 6, 2000. The third indictment, Cause Number
878870, accused appellant of threatening Zacarias Charon with a stick while robbing
him on May 9, 2000. 
          First Counsel
          Brian D. Coyne was appointed as appellant’s counsel. Coyne reset the cases
for trial several times. He withdrew as appellant’s counsel on July 17, 2001.
          Second Counsel 
          On July 17, 2001, appellant hired Gerald B. Scheve. On August 16, 2001,
appellant entered a plea of guilty in each case without a plea bargain. In each case,
appellant signed a sworn “waiver of constitutional rights, agreement to stipulate, and
judicial confession” that, among other things, waived a jury and included the
statement, “I intend to enter a plea of guilty and plead guilty to aggravated robbery
with deadly weapon to a presentence investigation[,] unlimited argument.” [Sic.]
Appellant also initialed each of the applicable admonishments. He thus
acknowledged in each case that, if convicted of a first degree felony, he faced a term
of five years to 99 years or life in prison and a fine not to exceed $10,000. Finally,
appellant initialed his understanding of the consequences of his plea and his
acknowledgment that he had fully consulted with his attorney, that he understood the
admonishments, and that he was “totally satisfied with the representation provided
by my counsel and I received effective and competent representation.”
          The PSI sentencing hearing was scheduled for October 23, 2001, and
subsequently reset to November 15, 2001. On November 15, Scheve failed to appear
in court. His secretary called in for him, stating that he was ill, and the PSI hearing
was rescheduled to November 26. Again, Scheve called in sick, and the PSI hearing
was rescheduled to December 10. On December 10, appellant appeared in court
without an attorney, and the hearing was again postponed. 
          On December 12, 2001, Scheve filed a request to withdraw as counsel. In his
written statement, Scheve stated that he had been suffering for two years from an
illness that affected his ability to walk and that Judges Belinda Hill and Jeannine Barr
had insisted that he employ an associate to help with his cases. His associate had left
in May, 2001. Since November 1, 2001, he had suffered from dizziness, apparently
caused by his medication, that affected his ability to walk and to think. On December
13, 2001, the trial court granted Scheve’s request to withdraw as counsel. 
          Third Counsel 
          On December 12, 2001, the court appointed Layton Duer as appellant’s new
counsel. The sentencing hearing was reset for December 21, 2001, nine days after
Duer’s appointment. Duer did not request additional time to prepare for the hearing.
          At the commencement of the sentencing hearing, the court announced that Duer
had had an opportunity to examine the PSI report and asked whether he wished to add
anything. Duer declined, but asked that appellant be sworn as a witness. Duer elicited
testimony from appellant that he had visited appellant in jail on the day he was
appointed, that they had then discussed the PSI report, and that Duer had
subsequently talked with appellant about his court appearance. Duer then gave
appellant an opportunity to read a prepared statement asking the court for leniency
and afterwards began his direct examination of appellant.
          After eliciting testimony that appellant had been in jail for 18 months, Duer
made the following statement:
          Q [Mr. Duer]:        Now, I’m not familiar with the offenses in these cases. 
What I have read is the summary of the offense reports that
are included in the PSI that I have here in front of me. As
I understand it that you were never accused of actually
having any sort of a weapon in your possession; is that
correct?
 
          A [Appellant]:       That’s correct.
 
          Q [Mr. Duer]:        Is it true that during these three episodes, three robberies,
that you never actually had a weapon in your hand?
 
          A [Appellant]:       I never had a weapon.
 
          Q [Mr. Duer]:        Did you ever personally injure anybody during any of these
episodes?
 
          A [Appellant]:       No.
          Q [Mr. Duer]:        Now, I understand also that you do have no prior criminal
record; is that correct?
 
          A [Appellant]:       That’s correct, sir.
(Emphasis added.)
          In response to these questions and answers, the trial court directed Duer to
pages six and seven of the PSI report, which stated that appellant had been convicted 
for theft and escape while in custody for assault/domestic violence. These reports
demonstrated that appellant’s testimony that he had “no prior criminal record” was
inconsistent with the PSI report.
          The PSI report in each of the three cases also contained a detailed summary of
the offenses with which appellant was charged. Each offense report summary
described injury, or threat of imminent bodily injury, to the complainant, together
with the use of a deadly weapon, by appellant and two other men. Each PSI report
also included descriptions of three extraneous offenses with which the three men had
not been charged. The offense report summaries make it clear that Duer’s
understanding that appellant had never been “accused of actually having any sort of
a weapon in your possession” was inconsistent with the PSI report.
          During further brief questioning of appellant, Duer referred to the prior
offenses to which the court had appointed him as “a misdemeanor, two misdemeanor
convictions”; then, when appellant began to testify that he had been convicted of
misdemeanor theft for stealing “baby milk” for his son, Duer interjected, “Wait a
minute. What I have is a theft and an escape.” The court interrupted Duer’s
questions of appellant again to check the age of appellant’s son at the time appellant
was convicted of the theft of baby formula, determined that the son was five years
old, stated, “You weren’t stealing for your son like you told him,” and directed Duer
to continue. After a few more questions regarding appellant’s support for his
children, Duer passed the witness.
          During cross-examination by the prosecutor, appellant testified in detail about
each charged offense. Each of the three assaults was committed by “a party of three,”
himself, his twin brother, and his uncle. He “took the lady’s purse” in Cause Number
867829 and was “on the other two,” but did nothing because he was too high on
“crack” cocaine, which he had been using for two years. Because he did not have
money to buy crack, “I went with my brother when we did those last three” behind
Northline Mall. When he stole the purse, he was high and on his way to buy crack
with his brother and their girlfriends and he “didn’t feel like going all the way back
to southwest and ask my boss for money,” so he got out of the car and demanded the
purse. The lady said he had a knife, but he did not. “I probably scared her because
she probably wasn’t expecting that. That would scare anybody. It would scare me.”
          Appellant denied committing the offense in Cause Number 867831, in which
Mendez was beaten with a stick on the side of his head, his pants torn, his wallet
taken, and a necklace snatched from around his neck; he testified that he was in jail
that day, May 6. Subsequent questioning from the State and the court established,
however, that appellant had been released from jail. When confronted by the State
with his confession of his active role in the assault—described in the PSI report as
appellant’s hitting Mendez on the side of his head with a stick, then ripping his pants
pocket and grabbing the wallet, then snatching his necklace from his neck while a
second man grabbed Mendez’s arms and held them behind his back—appellant
denied knowing what he had told the police.
          Appellant’s recollection of the third offense was somewhat better:
          Q [Ms. Escobedo]:          What about the other offense in which you stated
that your uncle, your brother, Paul, was driving the
same 1987 Toyota that you said your uncle was
armed with the same club and that you and [your
uncle] Felix confronted the complainant? You stated
Felix beat the complainant severely all over his body
causing serious bodily injury. Stated blood spattered
everywhere. Felix continued to beat the complainant
with a stick. I stole the man’s wallet. And you guys
fled in the vehicle. You said the complainant only
had $4 in his wallet. You remember that?
 
          A [Appellant]:                 I remember something like that.
Appellant continued, however, to distance himself from his confession, to excuse his
behavior and to deny responsibility for the charged offenses, blaming his uncle and
twin brother. 
           Appellant also testified on cross-examination that he was unemployed; that he
had children by three different girlfriends; that he previously had been jailed for
domestic violence; that he seldom had seen the children because he could not be
around them while on drugs or alcohol or he would be arrested; that he had paid very
little for their support; that he could not stop using drugs; and that he had never tried
to get help for his drug problem. In response to questions from the court, appellant
admitted to a prior arrest for domestic violence for beating up the mother of his son
and kidnapping the boy, after which he escaped from custody by leaving the hospital
where he was being treated for appendicitis. He testified that he and his twin were
both “crack heads” and that he was documented by the police department as a gang
member. The robberies he was doing were for money and drugs; and the three cases
all occurred on the same street behind Northline Mall.
          Duer waived the right to put on additional evidence and the right to argue at
the sentencing phase after the trial court determined appellant’s guilt. Following the
hearing, the court, having determined guilt, sentenced appellant to 20 years on each
count, to run concurrently. Appellant signed the notice of appeal the same day and
asked the court to set bail, which the court set at “$0,” signing on the same form. 
That same day, having been advised by Duer of his rights, appellant signed a pauper’s
oath and requested appointment of counsel on appeal.
          On January 7, 2002, the court appointed Jim Leitner as appellant’s counsel on
appeal. Leitner filed both a general and a specific notice of appeal. Tex. R. App. P.
25.2(b)(2); (b)(3)(A),(B). Appellant’s appellate counsel also filed a motion for new
trial. Appellant’s motion was overruled by operation of law, and this appeal
followed.
Ineffective Assistance of Counsel
          In his first issue, appellant asserts that he was denied effective assistance of
counsel. He contends that he involuntarily pleaded guilty to the three aggravated
robberies because (1) his second counsel, Scheve, who was suffering from an illness
that altered his thinking ability, advised him to plead guilty and (2) his third counsel,
Duer, who represented him at the punishment phase, was not familiar with the
charges against appellant, the facts of appellant’s cases, and the facts of appellant’s
past criminal history, and, therefore, did not know of or present appellant’s defenses.
          To show ineffective assistance of counsel, an appellant must demonstrate that
(1) counsel’s representation fell below an objective standard of reasonableness based
on prevailing professional norms, and (2) but for counsel’s errors, there is a
reasonable probability the result of the proceeding would have been different. 
Strickland v. Washington, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 2064-65, 2068
(1984). This standard of proof of ineffective assistance applies to the punishment
phase as well as to the trial stage of criminal proceedings. Wiggins v. Smith, 123 S.
Ct. 2527, 2535 (2003); Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App.
1986). A “reasonable probability” is defined as “a probability sufficient to undermine
confidence in the outcome.” Wiggins, 123 S. Ct. at 2542; Strickland, 466 U.S. at 694;
104 S. Ct. at 2068; Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999);
Jackson v. State, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). It is an appellant’s
burden to prove a claim of ineffective assistance of counsel by a preponderance of the
evidence. Thompson, 9 S.W.3d at 813; Jackson, 973 S.W.2d at 956; McFarland v.
State, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992). The appellant must satisfy both
prongs of the Strickland test, or the claim of ineffective assistance will fail. Wiggins,
123 S. Ct. at 2535; Strickland, 466 U.S. at 700, 104 S. Ct. 2071; Garcia v. State, 57
S.W.3d 436, 440 (Tex. Crim. App. 2001).
          We must look to the “totality of the representation and the particular
circumstances of each case” in evaluating the effectiveness of counsel. Thompson,
9 S.W.3d at 813. In so doing, we recognize the strong presumption that counsel’s
performance fell within the wide range of reasonable professional assistance. 
Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; Thompson, 9 S.W.3d at 813. As the
Supreme Court observed:
It is all too tempting for a defendant to second-guess counsel’s
assistance after conviction or adverse sentence, and it is all too easy for
a court, examining counsel’s defense after it has proved unsuccessful,
to conclude that a particular act or omission of counsel was
unreasonable.

Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. To defeat the presumption of
reasonable professional assistance, “any allegation of ineffectiveness must be firmly
founded in the record, and the record must affirmatively demonstrate the alleged
ineffectiveness.” McFarland, 928 S.W.2d at 500.
          The State claims that, since there was no motion for new trial hearing to
establish the reasons for Scheve’s and Duer’s actions,


 and since their trial strategy
cannot be determined from the record, appellant has not rebutted the presumption that
he received reasonable assistance of counsel. See Thompson, 9 S.W.3d at 813. The
Texas Court of Criminal Appeals has held, however, that a motion for new trial
claiming ineffective assistance of counsel is not always required to preserve that
claim. See Robinson v. State, 16 S.W.3d 808, 809-10 (Tex. Crim. App. 2000). A
timely filed appeal is a proper procedure for seeking relief regarding ineffective
assistance of counsel. See id. A hearing on a motion for new trial is required only
when the motion raises matters extrinsic to the record. See Castoreno v. State, 932
S.W.2d 597, 605 (Tex. App.—San Antonio 1996, pet. ref’d). When an appellant’s
allegations of ineffective assistance of counsel are firmly founded and affirmatively
demonstrated in the record, no evidentiary hearing is required. See McFarland v.
State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996); Castoreno, 932 S.W.2d at 605. 
Therefore, we address whether the record affirmatively demonstrates ineffective
assistance of counsel.
          Appellant’s Claim of Ineffective Assistance of Counsel by Scheve
          Scheve was appellant’s second counsel. During the time he was represented
by Scheve, appellant entered guilty pleas on all three counts of aggravated assault
with a deadly weapon without an agreed recommendation as to punishment, but with
an agreement that a PSI report would be prepared and that, at the sentencing hearing,
appellant would be accorded unlimited argument. Appellant acknowledged his
understanding of the bargain, his receipt of the court’s admonishments, and the
effectiveness of his counsel. Rather than reflecting Scheve’s inability to think at that
time, as appellant alleges, the record reflects that Scheve’s dizziness began on
November 1, 2001—the month in which the PSI hearing was set. Scheve promptly
sought to withdraw from representing appellant, and the court granted that request
and immediately appointed substitute counsel. 
          The first prong of the Strickland test for ineffective assistance of counsel
requires an appellant to demonstrate that his counsel’s representation fell below an
objective standard of reasonableness under prevailing professional norms. See
Strickland, 466 U.S. at 687-88, 104 S. Ct. at 2064-65. The record “must affirmatively
demonstrate the alleged ineffectiveness.” McFarland, 928 S.W.2d at 500. Here, it
does not. We overrule appellant’s first point of error with respect to Scheve.
          Appellant’s Claim of Ineffective Assistance of Counsel by Duer
          Duer represented appellant at the sentencing stage of the proceedings. The
two-pronged test for ineffective assistance of counsel set out in Strickland applies to
sentencing proceedings. Wiggins, 123 S. Ct. at 2535; Hernandez v. State, 988 S.W.2d
770, 772 (Tex. Crim. App. 1999). The first prong of the Strickland test requires an
appellant to demonstrate that his counsel’s effectiveness at the punishment phase fell
below an objective standard of reasonableness under prevailing professional norms. 
Wiggins, 123 S. Ct. at 2535; Strickland, 466 U.S. at 688-89, 104 S. Ct. at 2065. The
duty to investigate is not, however, categorical; rather, “‘counsel has a duty to make
reasonable investigations or to make a reasonable decision that makes particular
investigations unnecessary.’” Id. (quoting Strickland, 466 U.S. at 691, 104 S. Ct. at
2066). Counsel’s strategic choices made after a less than complete investigation of
the law and facts relevant to plausible options are considered reasonable, on a claim
of ineffective assistance, precisely to the extent that reasonable professional
judgments support limitations on the investigation. Wiggins, 123 S. Ct. at 2535
(quoting Strickland, 466 U.S. at 690-91, 104 S. Ct. at 2066).
          When, as here, the judge assesses the punishment in a felony case, he must
order a written PSI report to be prepared by a supervision officer. Tex. Code Crim.
Proc. Ann. arts. 37.07 § 3(d), 42.12 § 9(a) (Vernon Supp. 2003). The report must
include the circumstances of the offense with which the defendant is charged, the
amount of restitution necessary to adequately compensate a victim of the offense, the
defendant’s criminal and social history, and any other information relating to the
defendant or the offense that the judge requests. Id. art. 42.12 § 9(a). Before
sentencing the defendant, the judge must permit the defendant or his counsel to read
the PSI report, to comment on it, and, with the court’s approval, to introduce
testimony or other information alleging a factual inaccuracy in the report. Id. art.
42.12 § 9(d), (e). It is the duty of the trial court to consider the evidence submitted
upon a defendant’s pleading guilty; as the trier of fact, the court may find the
defendant guilty of a lesser offense or it may find him not guilty. Solis v. State, 945
S.W.2d 300, 303 (Tex. App.—Houston [1st Dist.] 1997, pet. ref’d).
          In all criminal cases, after a finding of guilt, regardless of the plea or whether
punishment is assessed by the judge or the jury, both the State and the defendant may
offer evidence as to any matter the court deems relevant to sentencing. The trial court
is also required to afford a defendant the opportunity to present evidence regarding
punishment. Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a)(1). Such evidence may
include the defendant’s prior criminal record, his general reputation, his character, an
opinion regarding his character, the circumstances of the offense for which he is
being tried, and any other evidence of an extraneous crime or bad act the defendant
has been shown beyond a reasonable doubt by evidence to have committed. Id. 
          Here, appellant’s guilty plea in each cause affirmatively recognized his right
to a PSI hearing with unlimited argument; the PSI report was prepared and made
available to defense counsel; and a hearing to assess punishment was held on
December 21, 2001, nine days after Duer was appointed appellant’s counsel.
Although the court was required to grant Duer 10 days to prepare for the punishment
hearing,


 Duer failed to request 10 days notice and did not seek a continuance.
          Duer could not have alleged a factual inaccuracy or omission in the
investigations or reports because, by his own admission, he was not familiar with the
offenses with which appellant was charged. That he was also unfamiliar with
appellant’s criminal history is shown by his affirmative statement on the record, “you
do have no prior criminal record, correct?” Duer could not have challenged the
accuracy or completeness of the PSI reports’ versions of the offense or appellant’s
criminal histories because, by his own admission, he was unfamiliar with both, and,
thus, was ineffective in performing functions under section 9(e) of article 42.12.
          Because Duer was unfamiliar with appellant’s offenses, he could not advance
any possible defense to the charges of aggravated robbery against him, or seek a
possible reduction of those charges.


 A trial court has the authority, despite a guilty
plea, to find a criminal defendant not guilty or to convict him of a lesser offense. 
Solis, 945 S.W.2d at 303. 
          Moreover, because Duer was unfamiliar with appellant’s offenses, he was
unable to determine whether mitigating evidence pertaining to appellant’s role in the
offenses existed. Duer’s questions to appellant at the hearing regarding appellant’s
background, the details of the charges against him, and his prior criminal record, as
well as Duer’s admission that he was “not familiar with the offenses,” make clear his
lack of knowledge as to whether there were any mitigating circumstances. 
          We cannot speculatively attribute the deficiencies in Duer’s performance to
“trial strategy,” as the State would have us do. Instead, we define the deference owed
allegedly strategic judgments in terms of the adequacy of the investigations
supporting those judgments. Wiggins, 123 S. Ct. at 2535. A failure to uncover and
present mitigating evidence cannot be justified as a tactical decision when defense
counsel have “not ‘fulfill[ed] their obligation to conduct a thorough investigation of
the defendant’s background.’” Wiggins, 123 S. Ct. at 2535(quoting Williams v.
Taylor, 529 U.S. 362, 396, 120 S. Ct. 1495); see also Ex Parte Duffy, 607 S.W.2d
507, 526 (Tex. Crim. App. 1980), overruled on other grounds by Hernandez, 988
S.W.2d at 771 (it may not be argued that a given course of conduct is within the realm
of trial strategy unless and until the trial attorney has conducted the necessary legal
and factual investigation that would enable him to make an informed, rational
decision).
          We hold that an attorney who is brought into a case specifically to represent a
criminal defendant at the PSI hearing has a duty to familiarize himself sufficiently
with the totality of the legal and factual circumstances to be capable of making an
informed and rational decision regarding whether or not to advance rights accorded
the defendant by law, such as the right to seek a continuance; to seek a correction,
amendment, or supplementation of the PSI report; to seek withdrawal of a plea of
guilty or reduction of the charges; or to put on mitigating evidence. See Wiggins, 123
S. Ct. at 2535 (quoting Strickland, 466 U.S. at 690-91, 104 S. Ct. at 2066) (counsel’s
strategic choices made after less than complete investigation of law and facts relevant
to plausible options are considered reasonable, on a claim of ineffective assistance,
precisely to extent reasonable professional judgments support limitations on
investigation).
          Here, the record affirmatively demonstrates that Duer did not fulfill his “duty
to make reasonable investigations or to make a reasonable decision that makes
particular investigations unnecessary.” Wiggins, 123 S. Ct. at 2535 (quoting
Strickland, 466 U.S. at 691, 104 S. Ct. at 2066). Appellant’s counsel’s effectiveness
at the punishment phase, therefore, fell below an objective standard of reasonableness
under prevailing professional norms. See Wiggins, 123 S. Ct. at 2535; Strickland,
466 U.S. at 689, 104 S. Ct. at 2065. We conclude that appellant has satisfied the first
prong of the Strickland test with respect to his representation at the punishment
phase.
          The second prong of the Strickland test requires an appellant to demonstrate
that, but for his counsel’s errors, there is a reasonable probability the result of the
proceeding would have been different. Wiggins, 123 S. Ct. at 2542; Strickland, 466
U.S. at 694, 104 S. Ct. at 2068. An appellate court will not reverse a conviction for
ineffective assistance of counsel at the punishment stage unless the appellant shows
prejudice as a result of deficient attorney performance. Wiggins, 123 S. Ct. at 2542;
Hernandez, 988 S.W. 2d at 770. To assess prejudice, “we reweigh the evidence in
aggravation against the totality of available mitigating evidence” as indicated by the
record as a whole. Wiggins, 123 S. Ct. at 2542.
          Here, there is no indication in the record that, had Duer fulfilled his duty to
investigate or make a reasonable decision not to investigate, the result of the
proceeding would have been different. There is no indication that there were factual
inaccuracies in the PSI reports, or that the reports were materially incomplete, or that
appellant’s guilty pleas were improper, or that information was available to Duer
which would have led to mitigating evidence sufficient to reduce appellant’s
sentences had Duer fulfilled his duty to investigate.


 Instead, there is overwhelming
evidence, in the form of the PSI reports and appellant’s own testimony, elicited by the
State and by the trial court at the sentencing hearing, that supports the charges of
aggravated robbery, appellant’s guilty pleas, and the sentences assessed against
appellant. Appellant has thus failed to satisfy the second prong of the Strickland test
for ineffective assistance.
          We hold that appellant has not satisfied the second prong.
          We overrule appellant’s first point of error.
Failure to Grant Defendant’s Counsel 10 Days to Prepare for PSI
          In his second point of error, appellant argues that he was deprived of his right
to have 10 days for his new counsel to prepare for the PSI hearing. See Tex. Code
Crim Proc. Ann. art. 1.051(e) (Vernon Supp. 2003). A violation of article 1.051(e)
constitutes error. See Rojas v. State, 943 S.W. 2d 507, 510 (Tex. App.—Dallas 1997,
no pet.) (citing Miller v. State, 866 S.W. 2d 243, 247 n. 10 (Tex. Crim. App. 1993)).
However, this error is subject to a harm analysis. Matchett v. State, 941 S.W. 2d 922,
928-29 (Tex. Crim. App. 1996). We conclude, on the basis of the record, that the trial
court violated the Code of Criminal Procedure by giving Duer nine days—instead of
10—to prepare. We cannot say, however, that one additional day would have affected
appellant’s defense or the outcome of the sentencing hearing. See Tex. R. App. P.
44.3(b). We conclude that the error was harmless.
Withdrawal of Guilty Plea
          In this third issue, appellant contends that the trial court erred in not sua sponte
withdrawing appellant’s guilty plea. The trial court is not required to withdraw a plea
of guilty sua sponte and enter a plea of not guilty for a defendant when the defendant
enters a plea of guilty before the court after waiving a jury, even if evidence is
adduced that reasonably and fairly raises an issue as to his guilt. See Thomas v. State,
599 S.W.2d 823, 824 (Tex. Crim. App. 1980); Moon v. State, 572 S.W.2d 681, 682
(Tex. Crim. App. 1978); Brown v. State, 11 S.W.3d 360, 362-63 (Tex.
App.—Houston [1st Dist.] 2000, pet. ref’d); Solis, 945 S.W.2d at 303. It is the duty
of the trial court to consider the evidence submitted; as the trier of the facts, the court
may find the appellant guilty of a lesser offense, or it may find the defendant not
guilty as the facts require. Thomas, 599 S.W.2d at 824; Moon, 572 S.W.2d at 682;
Solis, 945 S.W.2d at 303. Here, the trial judge, as the trier of the facts, considered the
evidence submitted, found appellant guilty of the charged offenses, and sentenced
him to 20 years’ confinement on each charge, his sentences to run concurrently. The
trial court did not err.
          We overrule appellant’s third issue. 
Conclusion
          We affirm the judgment of the trial court.


                                                             Evelyn V. Keyes
                                                             Justice
Panel consists of Justices Hedges, Keyes, and Duggan.



Justice Hedges concurring.
Publish. Tex. R. App. P. 47.2(b).